# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

BERNARD ANTHONY SMITH,

          Plaintiff,

vs.

CORNELL SMITH, et al.,

          Defendants.

No. C15-3094-LTS

**MEMORANDUM OPINION AND ORDER ON REPORT AND RECOMMENDATION**

---

### TABLE OF CONTENTS

I.     **INTRODUCTION** .................................................................. 2

II.    *FACTUAL BACKGROUND* ............................................................ 2

III.   *LEGAL STANDARDS* .................................................................. 7

     A.    *Standards for Review of R&R* .................................................. 7

     B.    *Summary Judgment Standards* ................................................. 8

IV.   *DISCUSSION* .......................................................................... 10

     A.    *Smith's Objections to Undisputed Facts* .................................... 10

     B.    *Smith's Objections to Conclusions of Law* ................................. 13

          1.    *Is Smith's Claim a Conditions of Confinement Claim or Deliberate Indifference to a Medical Need Claim?* ................. 14

          2.    *The Deliberate Indifference to a Serious Medical Need Claim* ... 15

               a.    *Was There an Objectively Serious Medical Need?* .......... 16

               b.    *Were The Defendants Deliberately Indifferent?* ............ 20

          3.    *Supervisory Liability and Failure to Train Claims* ................. 24

          4.    *Were The County Defendants Acting Under Color of State Law?* ....................................................................... 29

V.     *CONCLUSION* ......................................................................... 30

# I.    INTRODUCTION

Plaintiff Bernard Anthony Smith asserts claims of deliberate indifference to a serious medical need and failure to train pursuant to 42 U.S.C. § 1983.   These claims arise out of Smith's employment at the Carroll County Recycling Center and Landfill (the Landfill) while he was incarcerated at the North Central Correctional Facility in Rockwell City, Iowa (NCCF).   Smith alleges he was exposed to potentially hazardous materials while performing his job duties.

This case is before me on a Report and Recommendation (R&R) (Doc. No. 30) by the Honorable C.J. Williams, United States Magistrate Judge, on defendants' motions[1] for summary judgment.   *See* Doc. Nos. 20 and 26.   Judge Williams recommends I grant both motions.

Smith filed objections (Doc. No. 31) to the R&R on June 29, 2016.   The State Defendants filed a reply (Doc. No. 32) to Smith's objections, which the County Defendants joined and incorporated by reference (Doc. No. 33).

# II.    FACTUAL BACKGROUND

Judge Williams made the following findings of fact:

## A. Relevant Parties

> Plaintiff was an inmate formerly incarcerated at the NCCF. Doc. 20-2, at 1.   At the NCCF, defendant Cornell Smith was the Warden, Bob Johnson the Deputy Warden, Janet Stange the Executive Officer, Kathy Weiss a Nursing Supervisor, Pam Wise an Administrative Assistant, Darius Miller a Safety Officer, and Jason Janssen a Correctional Officer.   John Baldwin is a retired Director of

---

[1] Defendants Cornell Smith, Kathy Weiss, Pam Wise, Darius Miller, Janet Stange, Bob Johnson, Jason Janssen, Robin Bagby and John Baldwin (State Defendants) filed their Motion for Summary Judgment (Doc. No. 20) on January 8, 2016.   Defendants Mary Wittry, Muriel McDermott and Lynn Wuebker (County Defendants) filed their Motion for Summary Judgment (Doc. No. 26) on March 14, 2016.

the Iowa Department of Corrections (IDOC), and Robin Bagby is the IDOC Assistant Deputy Director. *Id.* At the Landfill, Mary Wittry was the Director, Muriel McDermott the Office Manager, and Lynn Wuebker a Landfill Operator. Doc. 26-2, at 1.

**B.    *Relevant Events***

Plaintiff was incarcerated at the NCCF from June 27, 2014, until he was released to work release on February 10, 2015. Doc. 20-2, at 2. On July 1, 2014, the NCCF provided defendant with orientation about many topics, including hazardous chemicals and protective equipment. Docs. 20-2, at 4; 20-3, at 44. This included "instruction in the use of protective equipment." Doc. 20-3, at 45. It does not appear the orientation provided plaintiff with training or education regarding blood-borne pathogens.

Between September and December 2014, plaintiff obtained treatment at the NCCF on five separate occasions for various problems, such as hemorrhoids and breathing issues, unrelated to his work at the Landfill. Docs. 20-2, at 2-3; 20-3, at 27-38. These records do not contain any reference that plaintiff claimed he was injured as a result of working at the Landfill. Indeed, despite his contact with medical personnel on four occasions in late November and early December 2014, plaintiff never once mentioned his work at the Landfill or his possible exposure to blood-tainted trash. Had plaintiff suffered an injury while working at the Landfill, the NCCF would have provided him with medical services. Doc. 20-2, at 3.

The NCCF has an agreement with the Landfill, pursuant to Chapter 28E, Code of Iowa (2011), for the employment of inmates at the Landfill. Doc. 26-2, at 1. Plaintiff was assigned to the Landfill on a work release program to pick up trash. *Id.* He worked there, at least, on November 6 and 11, 2014. Docs. 20-3, at 52, 57-58; 25-2, at 1. Plaintiff was provided yellow gloves to help protect his hands, but was not provided with any other protective clothing or equipment. Doc. 25-2, at 1.

On November 14, 2014, plaintiff filed a grievance regarding his work at the Landfill. Docs. 20-2, at 4; 20-3, at 52. As a result of the

3

grievance, NCCF improved training with regard to the Landfill litter project. *Id*. But, the grievance itself was denied on November 25, 2014. Docs. 20-2, at 5; 20-3, at 48-49. The warden affirmed the denial on January 14, 2015 (Doc. 20-3, at 46-47), and on January 20, 2015, it was further affirmed on appeal (Doc. 20-3). An Occupational Safety & Health Administration (OSHA) investigation resulted in a finding that no safety violations occurred. *Id*.

According to plaintiff's grievance, he claims that on November 6, 2014, he was "made to handle Biohazard products without proper training and P.P.E. equipment." Doc. 20-3, at 52. The grievance itself does not describe the products plaintiff claims he handled. It reflects plaintiff's claim that he told Kathy Weiss about his "exposure to potential blood borne pathogens." *Id*. The grievance references an attached "Kiosk Message." *Id*. The grievance itself does not indicate when plaintiff brought this incident to any official's attention; but, in an appeal document, plaintiff indicated that he "contacted [his] work coordinator upon returning to NCCF on the 6th." Doc. 20-3, at 57.

The Kiosk message, dated November 6, 2014, at 7:49 p.m., states: "I pick up bloody Bio hazard bags, syringes & diapers filled with fecicies [sic]. I am not trained in blood and body fluid protocol." Doc. 25-4, at 3.

On November 7, 2014, defendant Wise responded to the Kiosk message, instructing plaintiff to check his work schedule because he was to work at the Landfill the week of November 10, 2014. Doc. 25-4, at 3.

On November 8, 2014, plaintiff sent a Kiosk message to defendant Miller requesting training for handling "Blood&Body fluid clean up and the proper [PPE] required to do so." Doc. 25-4, at 4.

On November 9, 2014, plaintiff sent a Kiosk message to defendant Weiss stating: "I would like to talk to you about some issues Im having. Im not comfortable talking through o-mail, it is not secure. Could you please set up an appointment and notify me." Doc. 25-4, at 4. There is no indication in this message that plaintiff was complaining of handling potentially hazardous materials. Defendant

Weiss responded that plaintiff could see her on Thursday (November 13, 2014). Doc. 25-4, at 4. There is nothing in the record indicating whether plaintiff met with defendant Weiss that day, or what, if anything, he told her about having to allegedly handle potentially hazardous materials.

On November 17, 2014, defendant Weiss emailed defendants Stange and Wise noting that plaintiff asked Weiss "about protocol training" and that Weiss told plaintiff to speak to defendant Miller. Doc. 25-2, at 3-4. The email reflects that defendant Weiss asked plaintiff why he was interested and that plaintiff told Weiss about working at the Landfill "and things can be bloody." *Id*. The email reflects that defendant Weiss told plaintiff to wear gloves. *Id*.

On November 18, 2014, defendant Miller interviewed plaintiff about the issue. Doc. 25-4, at 16. Plaintiff told Miller that on November 6, 2014, while plaintiff was picking up wind-blown trash around the perimeter of the Landfill, plaintiff "came across a bio-bag with bloody rags, syringes, and bio-hazard bag in it." *Id*. Plaintiff told Miller that he did not touch the bag, but asked Miller for a "post-exposure examination" because he believed he "may have been exposed to blood borne pathogens." *Id*. Plaintiff told Miller that plaintiff did not report the possible exposure incident to any staff at the facility or any of the correctional officers. *Id*.

On November 20, 2014, plaintiff sent a Kiosk message to defendant Wise about working at the Landfill that day and handling "bloody napkins, the Diapers & fecices [sic] and about a dialysis bag with the I.V. tube still connected to it with dried blood in it." Doc. 25-4, at 4. He also claimed he showed the items to Jason Janssen. *Id*. Plaintiff claimed "this is the third time you have sent me out there W/O blood and body fluid protocol training." *Id*.

Later that evening, defendant Wise informed plaintiff he was no longer assigned to work at the Landfill. Doc. 25-4, at 2.

On December 3, 2014, defendant Miller from the NCCF met with defendants McDermott and Wittry at the Landfill. Doc. 25-2, at 1. An email from defendant Miller about the meeting stated "it was

apparent there was some confusion with regards to, who was giving the safety orientation training to the offenders, and what topics were required to be covered." Doc. 25-4, at 13. Defendant Wittry (Landfill Director) indicated that she thought defendant Wise was providing training to inmates about handling "the blood borne pathogen part of the safety training." *Id*. The email reflects that the Warden decided to keep inmates from working at the Landfill until the safety training issues were handled, and that the NCCF believed it was the Landfill's responsibility to provide this safety training. *Id*. The email further reflected, that in the future, offenders will be instructed to leave "blood borne material" alone and to notify an escorting officer so that it could be handled by other staff. Doc. 25-2, at 2.

The DOC Offender Work Programs policy provides, in pertinent part, that "Offenders shall receive training in work duties, procedures and safety issues prior to beginning assigned work functions." Doc. 25-4, at 7. It further provides that "Community Service Agencies/Outside Agencies shall provide training and equipment appropriate to the work setting." Doc. 25-4, at 11.

The Agreement between the DOC and the Landfill provides, in pertinent part, that the Landfill "shall provide and document training necessary to safely and properly perform a particular task or service." Doc. 26-3, at 24. It further provides that the Landfill "shall provide all tools, equipment, clothing, materials, supplies or other items, including safety equipment or clothing, necessary for the task or service to be performed." *Id*.

Plaintiff does not claim any prior physical condition was aggravated or accelerated by the alleged exposure to hazardous material. Doc. 26-4, at 10. He has not been examined or treated by any medical personnel for injuries allegedly sustained as a result of the alleged exposure to hazardous material. Doc. 26-4, at 11-12. Plaintiff does not claim that he has been required to take any medication because of his alleged exposure. Doc. 26-4, at 13. There is nothing in the record before the court showing that plaintiff sustained any physical or mental injury as a result of the alleged exposure.

Doc. No. 30 at 3-7 (footnote omitted). Based on my review of the record, I adopt Judge Williams' findings of fact in all respects except as set forth in Section IV(A), below.

## III. LEGAL STANDARDS

### A. Standards for Review of R&R

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any

issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).


B.    *Summary Judgment Standards*

Any party may move for summary judgment regarding all or any part of the claims asserted in a case.    Fed. R. Civ. P. 56(a).    Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."    *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'"    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).    Thus, "the substantive law will identify which facts are material."    *Id.*    Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not.    *Id.*

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question,"    *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting

the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

## IV.    DISCUSSION

### A.    Smith's Objections to Undisputed Facts

Smith identifies seven "factual objections" to the R&R.  *See* Doc. No. 30 at 3-7. In his first objection, he states that the R&R is correct in finding that he did not receive training or education on blood-borne pathogens, but did receive training on hazardous chemicals and protective equipment.   This is not an objection.   Nonetheless, I note this fact is undisputed and have considered it in my de novo review.

Second, Smith objects to the findings that (1) records from the NCCF "do not contain any reference that plaintiff claimed he was injured as a result of working at the Landfill" and (2) "[h]ad plaintiff suffered an injury while working at the Landfill, the NCCF would have provided him with medical services."   Doc. No. 30 at 3-4.   Smith contends he reported cuts and punctures on his hands and arms to defendant Janssen after his first day at the Landfill.[2]   He also contends he reported his concerns of potential exposure to defendants Janssen and Wise on November 6, 2014.   He lists multiple other occasions (with citations to the record) when he expressed his concerns to others, including named defendants.   It appears there are some NCCF records demonstrating Smith complained of exposure to blood-borne pathogens at the Landfill.   *See* Doc. No. 29-4 at 5 ("Claiming he had been exposed to blood borne pathogens, such as, but not limited to, bloody rags, bloody needles, and plastic containers which contained blood, and soiled diapers"); Doc. No. 29-4 at 11 ("I picked up bloody Bio hazard bags, syringes&diapers [sic] filled with fecicies [sic].   I am not trained in blood and body fluid protocall [sic].   Nor did I have the proper [PPE] to pick up such matter.   One should be vaccinated for hepitise [sic] A&B when working in such conditions.   I am concerned

---

[2] Smith's citations to the record in support of this objection are to his initial pro se complaint (Doc. No. 29-4 at 17) and a Grievance Acknowledgment and Receipt (Doc. No. 20-3 at 53). The former is merely an allegation while the latter appears to be a mistaken citation.   Neither is sufficient to establish this fact in the record.

for my safety.").    I find there is evidence in the NCCF records that Smith claimed he was injured by being exposed to blood-borne pathogens.    Whether Smith was actually injured, *i.e.*, exposed to blood-borne pathogens, is another issue.    However, the first part of this objection is sustained.

With regard to the second part, Smith objects to the finding that "NCCF would have provided him with medical services" had he been injured.    Doc. No. 30 at 4. Smith contends his exposure to materials including hypodermic needles, bloody bio-hazard bags, dirty diapers, and a dialysis bag constitutes an injury, for which he was denied medical testing.    Because this finding of fact is speculative and makes legal conclusions as to whether Smith was injured, I find it is not properly characterized as an "undisputed fact" that I should consider in determining whether summary judgment is appropriate.    Smith's objection is sustained in that regard.

Next, Smith objects to the factual finding that "NCCF improved training with regard to the Landfill litter project."    Doc No. 30 at 4.    Smith contends he and other inmate workers at the Landfill did not receive any additional training, including blood-borne pathogen training.    However, he admits that after he filed his grievance, additional training was provided to inmate workers who came into contact with bio-hazardous materials.    This objection is overruled as it is undisputed the additional training was put into place *after* Smith's complaints.

Smith next objects to the factual finding that his "grievance does not describe the products plaintiff claims he handled" and that it "does not indicate when plaintiff brought this incident to any official's attention."    Doc. No. 30 at 4-5.    The R&R does go on to state that an appeal document indicates Smith "contacted [his] work coordinator upon returning to NCCF on the 6th."    *Id.*    Smith notes that his grievance dated November 14, 2014, included multiple pages of attachments.    One of those attachments was a kiosk message Smith sent to Defendant Wise, which states that he had to pick up bloody

biohazard bags, syringes, and dirty diapers.   He also points out that the grievance details his actions upon returning to NCCF, which included notifying defendants Wise and Weiss.   Notably, Smith did not include the full grievance (with attachments) in either of his appendices in resistance to defendants' summary judgment motions.   While I am overruling this objection, I nevertheless note that the kiosk message referenced in the grievance and included in the record (Doc. No. 25-4 at 3-4) does indicate the types of products Smith claims he handled and that he sent a message to "Work Coordinator" outlining such on November 6, 2014.

Next, Smith objects to the factual finding that his November 9, 2014, kiosk message provides no indication whether (1) he complained of handling potentially hazardous materials or (2) whether he met with defendant Weiss and what, if anything, he told her about having to allegedly handle potentially hazardous materials.   Doc. No. 30 at 5.   The November 9 kiosk message stated:   "I would like to talk to you about some issues Im [sic] having.   Im [sic] not comfortable talking through o-mail, it is not secure.   Could you please set up an appointment and notify me.   Thankyou [sic] for your time."   Doc. No. 29-4 at 12.   Smith cites a NCCF Private Sector Employee Complaint Review and his initial pro se complaint and contends that these documents discuss the meeting he had with Weiss.   *See* Doc. Nos. 29-4 at 3, 18.   Smith's pro se complaint is not enough to demonstrate a disputed fact.   As the nonmoving party, Smith, "may not rest on the allegations of his pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists."   *Krein v. DBA Corp.*, 327 F.3d 723, 726 (8th Cir. 2003) (citing *Stone Motor Co. v. General Motors, Corp.*, 293 F.3d 456, 465 (8th Cir. 2002)).   As for the Private Sector Employee Complaint Review, it contains an email from Weiss stating:

> He asked me about protocol training and I informed him that he needed to
> speak with Darius Miller about this training.   I did ask him why the interest
> and he responded that he worked the Carroll Landfill and things can be

12

bloody. I informed him to wear gloves while he was working there. That was the only conversation I had with him.

This email is largely consistent with the factual findings in the R&R. Indeed, it appears Smith's main concern was about training. Because the factual finding in the R&R is not technically inaccurate, Smith's objection is overruled. I will take Weiss' email message into account, however, in conducting my de novo review.

Finally, Smith objects to the factual finding that "[t]here is nothing in the record before the court showing that plaintiff sustained any physical or mental injury as a result of the alleged exposure." Doc. No. 30 at 7. Smith cites his grievance appeal in which he complains that he feels like he has "been treated like the scum of the earth through this whole process" and that he is "being mocked." Doc. No. 20-3 at 55. He also cites his initial pro se complaint in which he states that he does not believe "this life threatening experience is being taken seriously by the individuals named in this suit" and that he lives with the fear every day "that he may have caught some type of infectious disease." Doc. No. 29-4 at 23-24. As noted above, mere allegations are not sufficient to demonstrate genuine issues of material fact. *See Krein*, 327 F.3d at 726. While I have found that the record demonstrates that Smith complained of an injury, I note that nothing in the record confirms the presence of an injury, or of any actual exposure to blood-borne pathogens. Smith has pointed to no other evidence, such as a doctor's note, demonstrating he suffered an objective physical or mental injury as a result of the alleged exposure. This objection is overruled as well.

### B. *Smith's Objections to Conclusions of Law*

Smith objects to Judge Williams' conclusions that each of Smith's claims fails as a matter of law. I will address those claims separately after first considering the proper characterization of Smith's claim based on a failure to provide medical testing after an alleged exposure to hazardous materials.

### 1. Is Smith's Claim a Conditions of Confinement Claim or Deliberate Indifference to a Medical Need Claim?

Judge Williams addressed the following claims in his R&R:

- Conditions of Confinement Claim

- Medical Needs Claim

- Supervisor Liability and Failure to Train Claims

- County Defendants Acting Under Color of State Law

Based on my de novo review of Smith's amended complaint (Doc. No. 26-3 at 3-12) and defendants' motions for summary judgment, I find that Smith has asserted only two claims: (1) deliberate indifference to medical needs and (2) failure to train/follow policy.

With regard to the first claim, the question is whether Smith's claim regarding failure to provide medical testing following an alleged exposure is a conditions of confinement claim or a deliberate indifference to a medical need claim. *See Aswegan v. Henry*, 49 F.3d 461 (8th Cir. 1995) (discussing the difference between the two claims). In *Aswegan*, the court made the following distinction:

> [W]hen an inmate . . . alleges deliberate indifference to current existing health problems, instead of his future health, the inmate must prove deliberate indifference to a serious medical need. When the inmate asserts that there will be harm to his future health or well-being, the inmate must satisfy the more general conditions of confinement test.

*Aswegan*, 49 F.3d at 464 (citations omitted). The plaintiff in *Aswegan* was an inmate who alleged that being placed in a small shower stall during cell shakedowns aggravated his asthma. The court concluded the district court erred in evaluating this allegation as a conditions of confinement claim rather than a deliberate indifference to a serious medical need claim. *Id.* at 465. The court stated: "Objectively, placing an inmate in a shower stall for 30 minutes that has an open front, when the water is not running,

14

does not deprive the inmate of breathing or any other identifiable human need." *Id.* Because the claim was based on the inmate's assertions concerning his medical conditions, it was properly characterized as a deliberate indifference to a serious medical need claim. *Id.* To put it another way, "[w]hen the condition of confinement at issue relates to a prisoner's medical condition, 'a prison official violates the Eighth Amendment by being deliberately indifferent *either* to a prisoner's *existing* serious medical needs *or* to conditions posing a substantial risk of serious *future* harm.'" *Aswegan*, 49 F.3d at 464 (quoting *Weaver v. Clarke*, 45 F.3d 1253, 1255 (8th Cir. 1995)) (emphasis in original); *see also Christian v. Wagner*, 623 F.3d 608, 613-15 (8th Cir. 2010) (concluding that inmate's claim of adverse reaction to cleaning products was properly considered as a deliberate indifference to a serious medical need claim).

Smith alleges both current and future harm. Specifically, he alleges in his first claim that he was exposed to blood-borne pathogens and needs testing to determine if he has contracted a blood-borne illness. He is not alleging that he may contract an illness in the future as a result of his work at the Landfill. For this reason, I find that Smith's first claim should be analyzed as a deliberate indifference to a serious medical need claim. *See also Binion v. Glover*, No. 07-13443, 2008 WL 4155355, at *13, 16-18 (E.D. Mich. July 28, 2008) (analyzing plaintiff's claim of failure to provide testing for diseases following needle prick from dirty needle that had been improperly disposed of in a wastebasket as a deliberate indifference to a serious medical need claim).

## 2. *The Deliberate Indifference to a Serious Medical Need Claim*

Smith contends the defendants were deliberately indifferent to his medical needs by failing to provide medical testing after his alleged exposure to bio-hazardous materials. To survive summary judgment on this claim, Smith must demonstrate a genuine issue of material fact regarding (1) whether he suffered an objectively serious medical need and

(2) whether defendants know of, but deliberately disregarded, that need. *Mead v. Palmer*, 794 F.3d 932, 936 (8th Cir. 2015). "An objectively serious medical need is one that either has been diagnosed by a physician as requiring treatment, or is so obvious that even a 'layperson would easily recognize the necessity for a doctor's attention.'" *Jones v. Minn. Dept. of Corrections*, 512 F.3d 478, 481 (8th Cir. 2008). A prisoner's bare assertions are insufficient to establish a serious medical need. *See Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994).

The second requirement is subjective and requires the plaintiff to show "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004). "An official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it." *Young v. Selk*, 508 F.3d 868, 873 (8th Cir. 2007). Although the level of blameworthiness must rise above negligence, a plaintiff does not have to show that the prison officials acted 'for the very purpose of causing harm or with knowledge that harm w[ould] result." *Letterman v. Does*, 789 F.3d 856, 862 (8th Cir. 2015) (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). In evaluating whether an official deliberately disregarded a risk, the court should consider "his action in light of the information he possessed at the time, the practical limitations of his position and alternative courses of action that would have been apparent to an official in that position." *Letterman*, 789 F.3d at 862 (quoting *Gregoire v. Class*, 236 F.3d 413, 419 (8th Cir. 2000)). I will evaluate whether Smith has demonstrated a genuine issue of material fact on each of these elements.

### a.    *Was There an Objectively Serious Medical Need?*

With regard to the objective element, Judge Williams noted that Smith had not been diagnosed with any medical problem, nor were there facts so obvious that even a

layperson would easily recognize the necessity for medical attention.    This conclusion was based primarily on the finding that Smith never claimed or established that his skin came into contact with any blood or other bodily fluids.    Nor did Smith claim any symptoms or allege any medical problems as a result of the alleged exposure.    Essentially, Judge Williams found that nothing about Smith's allegations, much less the record, established he had an objectively serious medical need due to his encounter with bio-hazardous materials at the Landfill that would require medical testing.

Citing *Helling v. McKinney*, 509 U.S. 25 (1993), Smith alleges he does not need to show current symptoms or medical problems.    In *Helling*, the Court held that the plaintiff had stated a viable cause of action under the Eighth Amendment by alleging that the defendants had, with deliberate indifference, exposed him to a condition (environmental tobacco smoke) that posed an unreasonable risk of serious damage to his future health.    *Helling*, 509 U.S. at 35.    Here, however, the procedural posture is different.    While *Helling* makes it clear that Smith can state a Section 1983 claim based on allegations of harm to his future health, it does not mean Smith can survive a motion for summary judgment based on allegations alone.    *See Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984) ("parties opposing summary judgment motions may not rest upon the allegations in their pleadings").    Moreover, as discussed above, I find that Smith's claim is appropriately analyzed as a deliberate indifference to a serious medical need claim rather than a conditions of confinement claim.    Based on the distinctions set forth in *Aswegan*, the claim asserted in *Helling* would likely be treated as a conditions of confinement claim if it was considered by the Eighth Circuit today.    *See Weaver v. Clarke*, 45 F.3d 1253, 1256 (8th Cir. 1995) ("*Helling*, in contrast, did not involve deliberate indifference to existing medical needs.").

In order to demonstrate a genuine issue of material fact as to whether he has an objectively serious medical need, Smith must come forward with some evidence of an

injury that "has been diagnosed by a physician as requiring treatment, or is so obvious that even a 'layperson would easily recognize the necessity for a doctor's attention.'" *Jones*, 512 F.3d at 481 (quoting *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)). Smith contends his skin *was* exposed to bio-hazardous materials and objects to the R&R's conclusion that he never claimed or established such exposure. *See* Doc. No. 31 at 10. Because defendants have filed motions for summary judgment, the issue is not whether Smith has sufficiently *claimed* he suffered an injury, but whether he has come forward with sufficient evidence to demonstrate a genuine issue of material fact on that point. He has not.

First, it is undisputed that Smith has not been diagnosed by a physician as requiring post-exposure treatment. Indeed, the record demonstrates Smith never discussed his exposure concerns with a medical professional. He reported to medical services on four occasions between November 6, 2014 and December 2, 2014. *See* Doc. No. 26-4 at 15-16, 20-32. During this time, he never asked a medical professional to evaluate whether he could have been exposed to blood-borne pathogens based on the circumstances of his work at the Landfill. *See* Doc. No. 26-4 at 17 ("Smith did not present himself to health services complaining of a work place injury (accidental needle stick, unprotected contact) during his stay at NCCF. If he did present at health services complaining of such contact, or exhibiting signs of a particular condition, medical testing could have been completed.").

Second, there is nothing in the record to suggest that a layperson could easily recognize the necessity for a doctor's attention. There is no record of the circumstances of any alleged contact with bio-hazardous materials because Smith did not alert any staff or correctional officer at the Landfill of the presence of, or his exposure to, bio-hazardous materials.[3] *Compare Binion*, 2008 WL 4155355, at *2 (noting the needle stick incident

---

[3] In a kiosk message dated November 20, 2014, Smith contends he did show bio-hazardous items

18

was reported to medical and plaintiff was evaluated for post exposure); *Damiano v. Lewis*, 145 F.3d 1337 (9th Cir. 1998) (concluding plaintiff raised a material question of fact as to whether prison officials were deliberately indifferent to his serious medical needs by failing to administer a test for Hepatitis C earlier than one and a half years after he was punctured with a needle). To the extent Smith argues the cuts and scratches on his hands and arms demonstrate contact with the bio-hazardous materials, these are only allegations. *See Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994) (noting a prisoner's bare assertions are insufficient to establish a serious medical need). Nothing in the record confirms the presence of these cuts and scratches, their severity, when they occurred, whether Smith reported them to a medical professional, or what the medical professional concluded about them. Furthermore, there is no evidence that the cuts and scratches were the result of tears through the gloves that Smith was wearing at the time he picked up the materials.

There *is* significant evidence in the record suggesting Smith did *not* make direct contact with any bio-hazardous materials. *See* Doc. No. 29-4 at 6 ("I asked him if he picked up the bag and if he had splattered any blood or touched the bloody rags? He stated that he did not touch the bloody material…"); Doc. No. 29-4 at 8 (noting that offenders are provided gloves, which are the same gloves Commission employees use); Doc. No. 29-4 at 6 (Smith acknowledged wearing gloves at Landfill). Indeed, after evaluating the situation, defendant Miller (the safety officer) concluded this was "not an exposure incident and post exposure follow up [was] not necessary by Health Services." Doc. No. 29-4 at 9. Another enforcement officer investigated the situation after Smith filed his grievance and reached the same conclusion. *Id*. at 9-10.

---

he had picked up to Defendant Janssen. Doc. No. 29-4 at 12. This does not establish that Smith's skin came into contact with any of these materials.

Finally, the Eighth Circuit has concluded, under similar circumstances, that there was no objectively serious risk of harm.  *See Moore v. Moore*, 111 F. App'x 436, 439 (8th Cir. 2004) (agreeing with district court's conclusion that picking up trash while wearing gloves did not expose Moore to a serious risk of harm).[4]

I find that Smith has failed to demonstrate a genuine issue of material fact as to whether he suffered an objectively serious medical need.  Smith has alleged he was exposed to blood-borne pathogens, but he has not been diagnosed as requiring post-exposure treatment, nor has he demonstrated any direct contact with bio-hazardous material such that a layperson could recognize that he required medical attention.  For the reasons explained above, I agree with Judge Williams that Defendants are entitled to judgment as a matter of law on the objective element of Smith's deliberate indifference to medical needs claim.  Smith's objections on this point are overruled.

### b.    Were The Defendants Deliberately Indifferent?

With regard to the subjective element, Judge Williams concluded Smith had not demonstrated a genuine issue of material fact as to whether the defendants were deliberately indifferent.  He noted Smith saw medical personnel four times after his

---

[4] Smith argues this case is distinguishable from *Moore*.  The court in *Moore* determined an inmate who was assigned to pick up cigarette butts and refuse in the prison yard was not exposed to a serious risk of harm because he had access to gloves and was not required to pick up any items containing body fluids.  *Moore*, 111 F. App'x at 438. Smith argues this case is different because officials knew there was bio-hazardous material at the Landfill and made Smith return to work there.  I fail to see the distinction Smith attempts to draw.  He has not pointed to any evidence in the record that he was *required* to pick up bio-hazardous items.  He has only demonstrated he was required to show up for his job at the Landfill.  Indeed, the record suggests Smith would *not* have been required to pick up hazardous materials had he notified officials of his encounter with them.  *See* Doc. No. 26-3 (affidavit of Mary Witty) at 28 (stating "[i]nmate workers are not required to handle hazardous or potentially hazardous materials" and "[h]ad Mr. Smith notified me or anyone at Carroll County Solid Waste Management Commission that he encountered such material he would not have been required to handle it").

alleged exposure, but never raised the issue at those appointments. Because there was no factual basis for Defendants to believe Smith had been exposed, Judge Williams found they could not have been deliberately indifferent by declining to test Smith for blood-borne diseases.

Smith objects to this conclusion by alleging there is evidence that defendants Wise, Weiss, Strange, Miller, Janssen and Wittry knew of Smith's complaints between the date of his first complaint (November 6, 2014) and his last day at the Landfill (November 20, 2014). He argues this demonstrates that the defendants knew of the risks and were deliberately indifferent by making Smith work there for three more days under the same conditions. He further relies on the fact that inmates were eventually excused from working at the Landfill until additional training could be completed.

As noted above, Smith did not report his alleged exposure to supervising staff or correctional officers at the Landfill. Smith also did not report his alleged exposure to medical professionals. He did send a kiosk message to his work coordinator, defendant Wise, upon returning from work on November 6, 2014. Doc. No. 25-4 at 3. He submitted another kiosk message to defendant Miller on November 8, 2014. On November 9, 2014, he submitted a kiosk message to Weiss saying he would like to talk to her about "some issues" he was having. Doc. No. 25-4 at 4.[5] Smith submitted a fourth message on November 20, 2014, stating he had again picked up bio-hazardous materials and had shown them to defendant Jannsen. Doc. No. 25-4 at 4. On November 21, 2014, Smith was given a different work assignment. Doc. No. 25-4 at 4. By November 25, 2014, the State Defendants had taken steps to evaluate the safety training that was available to offenders working at the Landfill. Doc. No. 26-4 at 42-43. On December 2, 2014, Miller conducted a safety training review and walk-around

---

[5] There is little record as to the conversation between Weiss and Smith. She noted in an email that Smith stated things could "be bloody" at the Landfill. She told him to wear gloves. She noted this was the only conversation she had with him. Doc. No. 25-4 at 15.

at the Landfill.   Doc. No. 25-4 at 13.   After this meeting, he and defendant Cornell Smith, the warden, determined it was appropriate to keep offenders from the Landfill until additional training could be performed.   *Id.*

It is clear from the record that the defendants knew about Smith's allegations and acted upon them.   In denying Smith's grievance appeal on January 20, 2015, defendant Bagby wrote:

> It appears you had an opportunity to express your concerns on many levels with key staff members who took your concerns serious and checked into them.   It also appears you were able to be a change agent regarding the institution working with the landfill to provide training in this area. Thanks to your efforts there is more training on behalf of the company but there does not appear there is an exposure incident to address at this time. Doc. No. 26-4 at 44.   Smith's objections essentially allege that more immediate action should have been taken upon receipt of his kiosk message dated November 6, 2014, and that he should have been tested based on his allegations of potential exposure.

Doc. No. 26-5 at 44.   With regard to the timing issue, defendants did not discover the discrepancy in the bio-hazardous materials training until December 2, 2014.   *See* Doc. No. 29-4 at 3-4 ("After a short discussion, it was apparent there was some confusion with regards to, who was giving the safety orientation training to the offenders, and what topics were required to be covered.").   This discovery was made after November 21, 2014, when Smith was discharged from his work at the Landfill.   Doc. No. 29-4 at 12. Prior to that, because Smith did not report the incident to any supervising staff or correctional officers at the Landfill, Smith's kiosk message and grievance [6] were addressed through ordinary procedures.   They were referred to Miller, the safety officer, who investigated the issues beginning on or about November 17, 2014.   Doc. No. 29-4 at 6, 11-12.   There is nothing to suggest that any delay in investigating or

---

[6] Smith's formal grievance was filed on November 14, 2014.   Doc. No. 26-4 at 46.

addressing Smith's complaints by the defendants was reckless. Indeed, the record reflects a timely response by the defendants based on the information available to them at each given time.

With regard to whether Smith should have been tested, defendants determined there was no exposure incident to address. In an interview, Smith denied touching the materials. *See* Doc. No. 29-4 at 6 ("I asked him if he picked up the bag and if he had splattered any blood or touched the bloody rags? He stated that he did not touch the bloody material..."). Defendants also understood that Smith wore gloves. *Id.* Moreover, Smith did not report his concerns of exposure to medical professionals during his four medical appointments between November 25, 2014 and December 2, 2014. In his meeting with Weiss, the head nurse, it appears Smith only discussed his concerns regarding training, not exposure. *See* Doc. No. 29-4 at 5. Nothing in the record suggests it was reckless for defendants to conclude there was no exposure to address. "[M]ere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000). *See also Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996) ("[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge.").

For these reasons, I agree with Judge Williams that the undisputed record concerning the subjective element of Smith's deliberate indifference claim demonstrates that the defendants are entitled to judgment as a matter of law. Smith's objections on this point are overruled.

### 3.   *Supervisory Liability and Failure to Train Claims*

Smith makes two objections with regard to this section of the R&R.   First, he argues that the defendants were deliberately indifferent for failing to properly train him. Second, he argues the State Defendants failed to supervise the County Defendants.   At the outset, I note that there appears to be some confusion about the nature of this claim. In his amended complaint, Smith makes the following allegations:

> 1. Defendants failed to properly train Plaintiff for his job at the Recycling Center and Landfill
>
> 2. Defendants failed to ensure that proper training was being given by the outside agency
>
> 3. Workers at the Recycling Center and Landfill failed to follow IDOC's written policy and provide proper training and equipment for the inmate workers.

*See* Doc. No. 26-3 at 8-9.   Notably, the amended complaint does not include an allegation that the State Defendants or County Defendants failed to properly train other state or county employees who were directly involved with ordering Smith to pick up trash.   In other words, Smith does not appear to be making a claim of supervisor liability based on failure to train[7] and neither set of defendants sought summary judgment on this

---

[7] This theory of liability can arise when public officials are sued in their official capacities.   A suit against a public official in his or her official capacity is a suit against the entity for which the official is an agent.   *See Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006).   "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents" on a respondeat superior theory of liability.   *Monnell v. New York Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).   However, a local government may be subject to Section 1983 liability for "inadequate training of its employees."   *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).   Under this theory, a plaintiff must show: (1) the entity's training practices were inadequate, (2) the entity was deliberately indifferent to the rights of others in adopting them such that the failure to train reflects a deliberate or conscious choice, and (3) the deficiency in training actually caused the official's indifference to the plaintiff's medical needs.   *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996) (citing *City of Canton*, 489 U.S. at 389).

basis or argued they cannot be held liable on a respondeat superior theory.[8]  *See* Doc.
Nos. 20-1 and 26-1.  Because Judge Williams only analyzed Smith's failure to train
claim as a supervisor liability claim, I do not find it necessary to review this section of
the R&R, but will review the issues de novo.  *See* Doc. No. 30 at 21-22.

Smith's failure to train claims are based on the County Defendants' alleged failures
to properly train *him* and the State Defendants' alleged failures to ensure that the County
Defendants were following IDOC policy.  His objections mirror those claims.[9]  *See*
Doc. No. 31 at 12 ("Each of the County Defendants failed to properly train Mr. Smith
as they knew the Landfill contained bio-hazardous materials containing dangerous blood-
borne pathogens that are transmittable through exposure" and "failed to act despite their
knowledge of a substantial risk of serious harm through exposure to bio-hazardous
materials."); Doc. No. 31 at 12 ("The State Defendant[s] failed to properly supervise the
County Defendants ensuring that they were complying with the 28E agreement and
training the inmates appropriately.").  I will take both objections into account in
conducting my de novo review.

Smith's first claim is that the County Defendants' failure to train him properly on
exposure to blood-borne pathogens constitutes deliberate indifference.  Officials who
are responsible for inmate safety during work assignments are held to a deliberate
indifference standard.  *See Ambrose v. Young*, 474 F.3d 1070, 1076 (8th Cir. 2007).
As noted above, this standard requires more than "mere negligence," but may be satisfied
by "something less than acts or omissions for the very purpose of causing harm or with
knowledge that harm will result."  *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  In

---

[8] While it may be true that liability as to some defendants may be precluded even in the absence
of a failure to train or failure to supervise claim, I will not address this issue as the defendants
did not raise it.  *See* Doc. Nos. 20-1 and 26-1.

[9] Smith does cite law concerning supervisor liability based on failure to train.  However, he
does not apply it to any of his specific objections.  *See* Doc. No. 31 at 11.

the context of Smith's claim, prison officials are deliberately indifferent when they "knowingly compel an inmate to perform labor that is beyond the inmate's strength, dangerous to his or her life or health, or unduly painful." *Ambrose*, 474 F.3d at 1077 (quoting *Sanchez v. Taggart*, 144 F.3d 1154, 1156 (8th Cir. 1998)).

It is undisputed that neither the State Defendants nor the County Defendants became aware of the discrepancy in the safety training regarding blood-borne pathogens until Miller's visit with Landfill staff on December 2, 2014. *See* Doc. No. 29-4 at 3. This discovery took place after Smith had already been assigned to a different job. *See* Doc. No. 29-4 at 12. Of course, knowledge is one of the key elements of a deliberate indifference claim. *See Farmer*, 511 U.S. at 842 ("it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm"). Because it is undisputed that the defendants did not possess the requisite knowledge concerning the lack of training on blood-borne pathogens until after Smith had been released from his job at the Landfill, there is no genuine issue of material fact as to whether defendants acted with deliberate indifference in having Smith continue to pick up trash at the Landfill. Smith's objections regarding this aspect of his failure to train claim are overruled.

Smith's second claim is twofold. He argues (1) that the County Defendants failed to follow IDOC policy by providing proper training and equipment and (2) that the State Defendants failed to ensure that the County Defendants were providing proper training. The IDOC policy section at issue states:

G.     Safety Issues

1.     All work programs shall be operated in accordance with applicable federal, state and local health and safety standards.

2.     Community Service Agencies/Outside Agencies shall provide training and equipment appropriate to the work setting. The Agencies shall maintain records of training.

3. Documentation of training specific to the offender's assignment will be forwarded to the institutional Safety Officer by employers. The institutional Safety Officer will inspect documentation of training for offender workers that was conducted by employers on the safe operation of any equipment, following the manufacturers' instructions and recommendations.

4. The IDOC may remove and withhold offenders from any work program, including private sector employment and community service work programs if unsafe working conditions or practices are discovered. Offenders shall not be permitted to return to that program until the unsafe condition or practice has been eliminated.

Doc. No. 29-4 at 33-34. Smith argues that the County Defendants did not follow this policy and that the State Defendants failed to ensure that the County Defendants followed it.

With regard to whether the County Defendants followed the policy, it is questionable whether they are subject to it. They are not employees of IDOC. However, the Landfill is subject to the Chapter 28E agreement with IDOC, which incorporates parts of the IDOC policy. For instance, the agreement states the Landfill "shall provide and document training [of offenders] necessary to safely and properly perform a particular task or service. Documentation of said training shall be provided to DOC upon request." Doc. No. 26-3 at 24. Of course, the issue is not whether the Landfill provided training, but whether it provided the proper scope of the training. It is undisputed that Smith received training on hazardous chemicals and protective equipment. *See* Doc. No. 26-4 at 39. It was not discovered until December 2, 2014, that this training did not include instruction on blood-borne pathogens and that no other training on blood-borne pathogens had been provided. *See* Doc. No. 29-4 at 3-4. As noted above, because deliberate indifference requires knowledge of a serious risk at the

27

time a plaintiff was exposed, there can be no finding of liability based on the evidence in the record. Smith's objection related to the County Defendants' failure to follow IDOC policy is overruled.

With regard to whether the State Defendants can be found liable for failure to ensure the County Defendants were providing the appropriate training, I find they cannot. Essentially, this is a failure to supervise claim. "Under § 1983, a claim for failure to supervise requires the same analysis as a claim for failure to train." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1216 (8th Cir. 2013) (internal quotations omitted). Under this analysis, Smith must show (1) NCCF's training was inadequate, (2) the failure to train reflects a deliberate and conscious choice by NCCF, and (3) an alleged deficiency in NCCF's training procedures caused plaintiff's injury. *See City of Canton v. Harris*, 489 U.S. 378, 389 (1989). To be clear, the issue is whether the State Defendants' failure to supervise/train the County Defendants in providing proper safety training to inmates working at the Landfill amounted to deliberate indifference.

Most failure to supervise/failure to train claims involve a supervisory relationship. *See e.g.*, *Liebe v. Norton*, 157 F.3d 574, 579-80 (8th Cir. 1998) (in which plaintiff sought to hold a county and sheriff liable for an inmate suicide based on failure to train and supervise a jailer). Here, there is no such relationship. Rather, the Landfill and the IDOC are parties to an agreement. The State Defendants cannot be held liable for failure to train the County Defendants because that agreement does not create an employee/employer relationship or otherwise obligate the State Defendants to supervise or train the County Defendants. *See* Doc. No. 26-3 at 21-26. The agreement provides that the Landfill "shall provide and document training [of offenders] necessary to safely and properly perform a particular task or service. Documentation of said training shall be provided to DOC upon request." Doc. No. 26-3 at 24. There are other provisions addressing each entity's authorities or duties as well. For instance, the IDOC agrees to

provide an orientation to the Landfill staff, the IDOC is given access to the work site for various purposes and the Landfill agrees to enforce any work rules supplied in advance by the IDOC. *Id.* I find that no supervisor/supervisee relationship is intended by this agreement. Rather, the agreement allows each entity to retain its own (limited) authority for that entity's mutual benefit. As such, based on the evidence in the record, the State Defendants cannot be held liable for failure to train or supervise the County Defendants. Smith's objection related to the State Defendants' liability on this point is overruled.

### 4.      *Were The County Defendants Acting Under Color of State Law?*

Smith objects to Judge Williams' finding that he failed to address the County Defendants' status as government employees. He points to his resistance to the County Defendants' motion for summary judgment in which he alleged "the Carroll County Solid Waste Management Commission is another department or agency of the State of Iowa." Doc. No. 29-3 at 12. Ultimately, the R&R reached the same conclusion. *See* Doc. No. 30 at 24 ("[t]he Carroll County Solid Waste Management Commission is another department or agency of the State of Iowa, a political subdivision of the State of Iowa . . . . ") (citing Doc. No. 26-3 at 21).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that a defendant, while acting under color of state law, deprived him of a federal right. *West v. Atkins*, 487 U.S. 42, 48 (1988). "[A] defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the state." *Id.* "Mere employment by a state or municipality does not automatically mean that a defendant's actions are taken under the color of state law." *Ottman v. City of Independence, Mo*, 341 F.3d 751, 762 (8th Cir. 2003) (quoting *Kern v. City of Rochester*, 93 F.3d 38, 43 (2d Cir. 1996)). "The dispositive issue is whether the defendant acted pursuant to power he or she

possessed by state authority." *Ottman*, 341 F.3d at 762 (quoting *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1523 (11th Cir. 1995)).

I find no error with respect to this section of the R&R, which concluded that the County Defendants were properly subject to suit. The County Defendants' duties consist of training and supervising inmates who work at the Landfill. Smith's allegations fall within the scope of these duties. Therefore, while the County Defendants are entitled to summary judgment for the other reasons discussed herein, they are not entitled to summary judgment on the alternative basis that they were not acting under color of state law.

## V.    CONCLUSION

For the reasons stated herein, I hereby **accept** the June 15, 2016, Report and Recommendation (Doc. No. 30) of United States Magistrate Judge C.J. Williams. As such, defendants' motions (Doc. Nos. 20 and 26) for summary judgment are **granted** and all claims asserted in this case by plaintiff Bernard Anthony Smith are **dismissed**. Judgment shall enter in favor of the defendants and against the plaintiff.

**IT IS SO ORDERED.**

**DATED** this 29th day of September, 2016.

LEONARD T. STRAND
UNITED STATES DISTRICT JUDGE